## Matie L. Moran, Appellee, v. Union Bank of Chicago, Appellant.

### Gen. No. 34,871.

Opinion filed May 4, 1932.

KIRKLAND, FLEMING, GREEN & MARTIN, for appellant; ROBERT N. GOLDING, of counsel.

MAXIMILIAN J. ST. GEORGE, for appellee.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

The defendant appeals from a judgment entered in the sum of $1,245, upon the finding of the court for that amount in favor of the plaintiff. The case was submitted to the court for trial without a jury. Matie L. Moran, the plaintiff, brought suit in the municipal court of Chicago against the Union Bank of Chicago, the defendant, for money had and received by the defendant.

The pleadings consist of an amended statement of claim, an amended affidavit, and a reply or rejoinder. No question is raised by either of the parties as to the sufficiency of the pleadings.

Prior to October 19, 1925, the plaintiff was solicited to join a syndicate known as "G. Frank Croissant's Boca Raton Development," and invested $1,000, which was paid by the plaintiff to the defendant, and she re-

ceived an interim receipt signed by F. H. Hayes, who was the assistant secretary of the defendant company, and whose name was apparently signed by a clerk of the company by the name of Pace. The interim receipt received by the plaintiff is in words and figures as follows:

"Union Bank of Chicago
25 North Dearborn Street, near Washington
Chicago,
Oct. 21, 1925.
In re: Trust No. 949
"Received of Matie L. Moran, 1421 E. 55th St.
One Thousand and No/100ths Dollars ($1,000.00) in full payment of a pre-organization subscription to a syndicate to be known as G. Frank Croissant's Boca Raton Development, to be organized for the purpose of purchasing acreage in the State of Florida. This receipt is an interim receipt and a permanent receipt will be substituted therefor when prepared and executed.

"It is understood that if the proposed syndicate is not completed and the land is not purchased by January 2nd, 1926, the holder hereof is entitled to the return of the amount subscribed.

Union Bank of Chicago, as Agent,
By F. H. Hayes
P
Asst. Secretary)"

It will be noted that the "Trust No. 949" in this receipt refers to the account wherein the funds of the subscribers to the Boca Raton Syndicate were deposited.

On or about December 15, 1925, Croissant and members of the syndicate known "as G. Frank Croissant's Boca Raton Development" entered into a certain trust agreement, which contained provisions for the operation of its subdivision enterprise. The plaintiff signed

this syndicate agreement and received the participating certificate signed by G. Frank Croissant, Trustee, which evidenced her interest as a beneficiary of this trust. The certificate is as follows:

"No. 382                                                    2 Units

G. Frank Croissant's
Croissantania Boca Raton Syndicate
4200 Units                                              $500 Each.

"This Certifies that Mrs. Matie L. Moran is the owner of Two (2) Units in the Croissantania Boca Raton Syndicate, transferable on the books of the Syndicate in person or by attorney duly endorsed.

"This Certificate is issued under the terms of the Syndicate Agreement, dated December 15th, 1925, and entitles the holder hereof to the rights, benefits and privileges accorded a participant under said agreement, but subject to and upon terms and conditions therein stated. By the acceptance hereof the holder agrees to be bound by all of the terms of the said agreement.

Dated January 2nd, 1926.

G. Frank Croissant,
Trustee."

The syndicate was described in the agreement as the "Croissantania Boca Raton Syndicate," being Trust No. 100, and the certificates which were issued to the beneficiaries have the same heading as appears on the certificate hereinbefore set out.

The syndicate agreement provides that the beneficiaries having subscribed a total sum of $2,100,000, being the capital of this syndicate, have an undivided interest in the syndicate; that the trustee is given "full power and authority to manage, improve, protect and maintain the trust estate, and each and every part thereof," and the trustee is given "power to deal with the trust estate and hold, collect, sue for and dispose of the same, and every part thereof." This agreement further provides that the real estate "is to be

conveyed to the trustee'' subject to existing incumbrances, and the beneficiaries jointly and severally agree to pay off the existing incumbrances. The trustee had power to borrow money for the purpose of paying for improvements, and to pay off the mortgages. It is also provided in the agreement that the trustee shall keep books, and each week make a full report to the beneficiaries committee. In the event of failure by the trustee to make accountings to the beneficiary committee, said committee shall have the right to remove the trustee and to appoint a new one. The beneficiary committee consisted of George Preschern, G. Frank Croissant, Samuel K. Markman, Henry K. Wells and Michael J. Flynn.

The evidence shows that there was deposited in the Union Bank of Chicago, in its accounts Nos. 949 and 1073, a total amount of $1,383,769.32, for the benefit of the syndicate. On October 15 and 16, 1925, prior to the time when plaintiff paid her money, Morphett, Phelps and Hartenstein assigned four option agreements for certain lands in Florida to Frank K. Reilly, an associate of Croissant. On October 15, Preschern O.K.'d a charge slip of the defendant bank for a New York draft to Reilly for $500,000. The charge slip bears the notation, ''At the request of G. Frank Croissant, apply on purchase of Boca Raton.'' On October 19, 1925, an additional $60,000 was charged to the Boca Raton account, upon the authority of a charge slip signed by Hayes. The charge slip bears the notation, ''Account 949 Boca Raton.'' On October 20, 1925, Reilly exercised the four options as provided for in the contract, and entered into four separate contracts with Boyland for the purchase of Boca Baton land, paying Boyland at the time $663,562.50, which was the amount required by the four contracts. The contracts were recorded in the office of the recorder of deeds of Palm Beach county, Florida, on October 22, 1925.

At the time these contracts were executed, Boyland executed four statutory warranty deeds, which were deposited, by counsel for Boyland and Reilly, in escrow with the Palm Beach Bank & Trust Company, to be delivered to Reilly upon the payment of the balance of $2,290,687.50.

The record shows that on or about December 15, 1925, the amount of money collected for and on behalf of the syndicate and deposited in Accounts Nos. 949 and 1073 was a total sum of $1,383,769.32; that of this amount there was a credit balance in the two accounts on that date of $219,547.94, and until April 9, 1926, when the accounts were closed and this balance was withdrawn by Croissant.

From the evidence, it appears that in April, 1926, the plaintiff attended a meeting of the syndicate members in Croissant's office, when she first learned from Croissant's statement that there was not any selling of lots in the subdivision, that there was no use pretending that there was; that the Union Bank was behind their properties, and that there would be no losses to anyone; that everybody would get his money back; and that later in October, 1926, the plaintiff called on Preschern, an officer of the defendant bank, who told her she should keep quiet and not become excited, and worry about it. No further steps were taken by the plaintiff until August 30, 1928, when this suit was filed by her to recover $1,000, the amount deposited with the defendant.

The record does not disclose that the plaintiff made any effort to ascertain from the defendant whether the terms of the interim receipt had been complied with before she signed the trust agreement.

The defendant contends that the plaintiff, by signing the trust agreement and accepting the participating certificate, assumed a status as a member of the syndicate and was barred from thereafter changing her position, on the ground:

(1) That while the plaintiff had certain rights under the interim certificate when called upon to sign the trust agreement, she was obliged to decide whether she would insist upon the return of her money because of failure of performance; and

(2) By signing the trust agreement and accepting the participating certificate and the benefit to be derived under the terms of the trust agreement, she was bound by her election.

There is no serious dispute regarding the facts. The plaintiff received from the bank the interim certificate hereinbefore set forth. Sometime after its date the plaintiff was called upon to sign the trust agreement, dated December 15, 1925, which she did, and a short time thereafter received the participating certificate dated January 2, 1926, issued and signed by Croissant, the trustee named in the trust agreement. She is chargeable with knowledge of the contents of both the interim receipt and the participating certificate.

If the plaintiff desired to rely upon the conditions of the interim receipt and, upon failure to perform the right to the return of the $1,000 deposited, she had the right to do so, but by accepting the participating certificate, issued as it was according to the terms of the trust agreement signed by her, and expecting to be benefited by this agreement, the plaintiff became a member of the syndicate, and was credited with the money deposited with the bank, as payment of the participating certificate. The plaintiff signed the agreement which authorized the trustee to collect the assets and all money on deposit with the defendant bank. This act of the plaintiff justified the action of the bank in paying to Croissant, trustee, the money deposited in the bank and credited to the syndicate accounts.

The plaintiff did not appear to be concerned, after signing the agreement, about false representation, and made no investigation until April, 1926, when she was

present at a meeting addressed by Croissant, and learned of the condition of the syndicate, and again when she called on Preschern at the bank and talked with him. Nothing was done by her, however, until August 30, 1928, when this suit was instituted against the defendant to recover the amount which was deposited with the bank, and for which she received her interim receipt.

It was a rather inconsistent position for the plaintiff to claim that she still had rights under the interim certificate after she had signed the trust agreement, from which she expected to derive benefits that might accrue because of possible success in the sale of the subdivision property. The plaintiff is not permitted to speculate upon the success of the syndicate and to stand inactive until the events of the future may determine it to be to her interest to rescind.

The statement of law by the Supreme Court in the case of *Richter v. Schuett,* 314 Ill. 127, applies to the facts in the instant case, where the court said: "It is a settled principle in equity that a person who has been defrauded will not be permitted, after he learns of the fraud, to stand inactive and fail and refuse to execute his option to rescind the fraudulent transaction until the events of the future may determine it to be to his interest, or otherwise, to rescind. (*Follett v. Brown,* 188 Ill. 244; *Stackpole v. Schmucker,* 225 id. 502.) The rule is stated in Pomeroy's Equity Jurisprudence (section 897) in this language: 'The person who has been misled is required, as soon as he learns the truth, with all reasonable diligence to disaffirm the contract or abandon the transaction and give the other party an opportunity of rescinding it and of restoring both of them to their original position. He is not allowed to go on and derive all possible benefits from the transaction and then claim to be relieved from his own obligations by a rescission for a refusal to perform on his own part.' "

The rule above cited is an equitable defense and applies to this action for money had and received. *Board of Supervisors of Stephenson County v. Manny,* 56 Ill. 160.

It is unfortunate that all syndicates are not successful, and the words of the Supreme Court in the case of *Hossack v. Ottawa Development Ass'n,* 244 Ill. 274, best illustrate such a situation when it said: "A development association of this nature, or a syndicate organization established for the purposes here shown, must take greater risks than ordinary business ventures. Indeed, a person with any business experience must have known, when signing this agreement, that he might run a risk of losing a very large part, if not all, that he subscribed."

Another condition which the plaintiff claimed was not performed as required by the interim receipt was the purchase of land on or before January 2, 1926. The record clearly established that four options to certain described real estate were obtained, and these options were assigned to Reilly; that thereafter Reilly exercised these options and paid the amounts required and that upon the payment of these amounts the owner of the land executed four statutory warranty deeds, which were deposited in the Palm Beach Trust & Savings Bank, to be delivered upon the payment of the balance of the amount due. The equitable interest of Reilly in and to the lands purchased when part payment was made and described in the warranty deeds deposited in escrow was conveyed to G. Frank Croissant, trustee.

There are different ways of acquiring title, one of which is for a purchaser to purchase land by an agreement that a warranty deed shall be executed and delivered by the owner when the purchase price, payable in instalments, is fully paid. In the case at bar there was an amount paid, as required by the option agreement, and the owner of the land, Boyland, executed the necessary warranty deeds, which were to be deliv-

ered by the Palm Beach Trust & Savings Bank, the escrow agent, upon the payment by the syndicate of the balance of $2,290,687.50. While it is true that there was no actual delivery of the deeds, still in the sense that there was a purchase, the deeds were executed and held in escrow to be delivered when the purchase price was fully paid.

When the plaintiff and others signed the trust agreement it appeared from the agreement that the beneficiaries had subscribed a total sum of $2,100,000 as the capital of the syndicate, and that the interest of each of the beneficiaries was the proportion of the whole which the amount of the beneficiary's paid subscription bore to the whole. When the beneficiaries had subscribed the amount of the capital, the syndicate was completed by the acts of the parties when they signed the agreement.

From the record and our conclusions it is apparent that the trial court erred in finding the issues for the plaintiff and in entering judgment against the defendant for the amount so found. The judgment is therefore reversed and the cause remanded for a new trial.

*Reversed and remanded.*

FRIEND and WILSON, JJ., concur.

Since filing our opinion herein appellee has filed a motion to modify the remanding portion of the order and to enter an order in lieu thereof reversing said cause without remanding, and in support of said motion appellee has filed suggestions admitting of record that upon a further proceeding or trial of said cause appellee does not desire to submit further evidence upon a retrial, and that appellant has consented in so far as appellant can consent to the entry of such order.

Therefore, our original order of May 4, 1932, is modified in accordance with appellee's suggestions, and the judgment of the municipal court is herewith reversed without remanding.

*Reversed.*

FRIEND and WILSON, JJ., concur.